IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:25-CV-451-MR

| | |
|---|---|
| JERRY ANDERS D/B/A ANDERS MANGA,<br><br>Plaintiff,<br><br>v.<br><br>STABILITY AI US SERVICES CORPORATION; and NAVARR ENTERPRISES, INC. D/B/A AUDIOSPARX,<br>Defendants. | **DEFENDANT NAVARR ENTERPRISES, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

Defendant Navarr Enterprises, Inc. ("Navarr") submits this Brief in Support of its Motion to Dismiss. The Declaration of Lisa Zumpano ("Zumpano Decl.") is being contemporaneously filed.

## FACTUAL BACKGROUND

Plaintiff, who is proceeding *pro se*, filed his Complaint on December 29, 2025 (Doc. No.[1] 1) and his First Amended Complaint on February 4, 2026 (Doc. No. 7). The material allegations against Navarr are the same in both the Complaint and First Amended Complaint.[2]

---

[1] "Doc. No." refers to the Court's ECF docket entry numbers for this lawsuit.

[2] It is well settled that an amended pleading supersedes the original pleading, Fed. R. Civ. P. 15; *see also Hall v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* No. 3:10-CV-418-RJC-DSC, 2011 WL 4014315, at *1 (W.D.N.C. June 21, 2011); *Young v. City of Mount Ranier*, 238 F.3d 567, 572-73 (4th Cir. 2001). Both Plaintiff's Complaint and First Amended Complaint are referenced in an abundance of caution because of service deficiencies described

1

Plaintiff alleges he is a recording artist residing in North Carolina. Doc. No. 1 at ¶1; Doc. No. 7 at ¶1. Navarr is a Florida corporation with a principal place of business in Florida. Doc. No. 1 at ¶3; Doc. No. 7 at ¶3; Zumpano Decl. ¶2.

Plaintiff alleges the existence of "Plaintiff's 2015 agreement" (Doc. No. 1 at ¶17; Doc. No. 7 at ¶18), and that he provided to Navarr musical recordings for their inclusion in Navarr's catalog for licensing of musical recordings to others. *See* Doc. No. 1 at ¶18; *see* Doc. No. 7 at ¶19. A copy of the referenced 2015 Agreement is attached as Exhibit A to the Zumpano Declaration.[3] The 2015 Agreement includes *inter alia* the following provisions:

> **Grant of Rights -** Licensor grants to AudioSparx a perpetual, irrevocable, non-exclusive, and assignable right to represent, market, sub-license, and distribute to clients on a worldwide basis the Works for all types of commercial and consumer uses, for the financial benefit of Licensor, including but not limited to … and to grant to clients various rights as necessary including, but not limited to, master use rights, synchronization rights, … .
>
> **…**
>
> **Term -** The Term of this license is perpetual and irrevocable (i.e. forever and cannot be terminated). For clarification, any Works uploaded to the

below. Further, the allegations against Navarr are materially identical in both documents. The First Amended Complaint includes the allegation that the Plaintiff filed it to "correct the identity of the Stability AI defendant." Doc. No. 7 at ¶5.

[3] "[I]n analyzing a Rule 12 motion, a court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. In particular, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint … so long as the authenticity of these documents is not disputed." *Bowser v. Gabrys*, 746 F.Supp.3d 256, 260 (W.D.N.C. 2024) (internal quotations and citations omitted). Here, the Agreement is explicitly referenced in the Complaint and underlies virtually all facts in this action. It may thus be considered on the motion to dismiss without transforming the Rule 12(b)(6) portion of the motion into another type of motion, such as one for summary judgment.

AudioSparx web site shall be considered to be perpetually licensed to AudioSparx and shall not be eligible for removal or take-down, subject to the conditions in the following paragraph.

...

**General** – This Agreement is non-assignable and shall be binding upon the heirs, successors and legal representatives of each of the parties hereto. This License Agreement is made in Florida, and shall be governed by and construed in accordance with the laws of the United States of America and of the State of Florida, with specific jurisdiction assigned to the court at in St. Johns County, Florida. Any cause of action by Licensor with respect to this agreement must be instituted within one year after the claim or cause of action has arisen or further action is forever barred. This agreement represents the full and complete understanding between the parties.

Zumpano Decl. ¶5 & Ex. A at pp. 1, 2 & 5.

While the broad, irrevocable license granted under the 2015 Agreement is fatal to his legal claim – as discussed below, Plaintiff asserts in his lawsuit that he did not grant Defendants authorization to copy, reproduce or use his alleged copyrighted works for artificial intelligence training and that Defendants have committed such actions. Doc. No. 1 at ¶¶16-20; Doc. No. 7 at ¶¶17-21. Plaintiff's asserted claim against Navarr is for alleged copyright infringement, under 17 U.S.C. § 501. Doc. No. 1 at ¶¶21-26 & Prayer for Relief; Doc. No. 7 at ¶¶22-27 & Prayer for Relief.

Plaintiff's purported proof of service (Doc. No. 6) of the Complaint and Summons includes the statement from the process server that after no one answered the door at the "home address" for Navarr, the documents were instead taken to and provided to Vanessa Kelly, an employee at a "Pack N Post" [sic] business having a private mailbox address for Navarr. Doc. No. 6. As explained by Ms. Zumpano in her Declaration, Ms. Kelly neither works for Navarr nor has she ever been authorized to

accept service for Navarr, and she did not provide the papers to Navarr. Zumpano Decl. ¶9. Further, Navarr has another address listed with the Florida Secretary of State's Office – the "home address" the process server apparently went to originally. Zumpano Decl. ¶8 & Ex. B. Navarr learned of this lawsuit through other means, namely from Stability. Zumpano Decl. ¶11.

Plaintiff's First Amended Complaint also has not been served upon Navarr. In connection with Plaintiff's First Amended Complaint, Plaintiff filed on February 10, 2026 a Certificate of Service stating that Plaintiff emailed a copy of his First Amended Complaint to H. Forrest Flemming at Kilpatrick Townsend & Stockton LLP. Doc. No. 10. Plaintiff errantly concludes that this was service upon "counsel for Defendants." Doc. No. 10. In fact, Mr. Flemming has never represented Navarr. Zumpano Decl. ¶13. Further, the notice of appearance (Doc. No. 8) filed on February 9 by Ms. Boyles, of the Kilpatrick law firm, clearly indicates that she represents a different defendant, not Navarr. Navarr has not been served by Plaintiff with any of the summons, complaint, or the first amended complaint for this lawsuit. Zumpano Decl. ¶10.

<u>**ARGUMENT**</u>

Plaintiff's claim against Navarr should be dismissed for several independent reasons: insufficient service of process, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

### I.     **Insufficient Service of Process.**

When the validity of service of process is challenged under Rule 12, the plaintiff bears the burden to establish validity of service. *Scott v. Maryland State Dep't of*

4

*Labor*, 673 Fed. Appx. 299, 304 (4th Cir. 2016). "Actual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff." *Id.* at 305; *see also Gallegos v. Molton*, No. 3:20-CV-496-FDW-DSC, 2022 WL 761717, at *1 (W.D.N.C. Mar. 11, 2022) ("A plaintiff's pro se status is insufficient to establish good cause justifying a failure of service, even where the pro se plaintiff mistakenly believes that service was made properly.").

Under Fed. R. Civ. P. 4 a corporation "must be served . . . in the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) also permits service "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

As Navarr is a Florida corporation with its principal place of business in Florida and as Plaintiff attempted to effectuate service in Florida, Florida law about methods of service is relevant. Under Florida law, a plaintiff may effectuate service of original process by "delivering a copy of it to the person to be served… or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. §48.031(1)(a).

Plaintiff did not satisfy of any of these methods. Navarr's president, owner and registered agent, Lisa Zumpano, has not been served as of the date of this filing. Zumpano Decl. ¶¶2, 8, 10. Plaintiff instead attempted substitute service by delivering the Summons and Complaint to an employee of a Pack 'n Post location, where Navarr maintained a private mailbox.

Florida law only allows substituted service by leaving a copy of the process with a person in charge of a private mailbox maintained by the person to be served in the following narrow circumstance prescribed by Florida statutes: "[i]f the **only** address for a person to be served which is discoverable through public records is a private mailbox . . . ." Fla. Stat. §48.031(6)(a) (emphasis added). That condition was not satisfied here. Public records at Florida's Secretary of State's website show at all relevant times an alternative address for Lisa Zumpano that is not the private mailbox address. Zumpano Decl. ¶8 & Ex. B. Further, Plaintiff's process server was aware of Ms. Zumpano's/Navarr's alternative address, writing "I was unsuccessful getting anyone at the home address to answer the door so I took it to Pack N Post…" Doc. No. 6. Accordingly, the putative service on any Pack 'n Post employee was deficient. *See TID Servs., Inc. v. Dass*, 65 So. 3d 1, 7–8 (Fla. 2d DCA 2010) (holding that service at a private mailbox was not an appropriate method of substitute service where plaintiff failed to prove the only address for defendant discoverable through public records was the private mailbox).

Moreover, Navarr learned of this lawsuit via its contacts with Stability—not as a result of Plaintiff attempting to effectuate service on Navarr. Zumpano Decl. ¶11.

As such, Plaintiff's failure to properly serve Navarr is more than a mere "technical violation" entitled to liberal construction of the rules—it is a basic failure to adhere to procedural requirements and "the Court is not entitled to ignore the plain requirements of the rules regarding effective service of process simply because actual notice of the litigation exists of even because a plaintiff is proceeding *pro se*." Oliver v. PHH Mortgage Corp., No. 3:20-CV-00304-GCM, 2021 WL 354127, at *2 (W.D.N.C. Feb. 2, 2021), *aff'd,* No. 21-1236, 2021 WL 6101659 (4th Cir. Dec. 22, 2021).

Plaintiff has also not served the First Amended Complaint on Navarr through any valid method. Zumpano Decl. ¶10.

Accordingly, Plaintiff's claimed proof of service on Navarr (Doc. Nos. 6 & 10) should be found not to be controlling, and all claims against Navarr should be dismissed for insufficient service of process.

## II.     Lack of Personal Jurisdiction.

When "personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. ¶12.07[2.2]); *see also Moseley v. Fillmore Co.*, 725 F. Supp. 2d 549, 557–58 (W.D.N.C. 2010).

"It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with

7

Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs. Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)); *see also Voyager Indem. Ins. Co. v. Gifford,* No. 1:21-CV-00242-MR, 2022 WL 4798306, at *4 (W.D.N.C. Oct. 3, 2022) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003)).

In the due process analysis, personal jurisdiction may be general or specific. Due process requires "'minimum contacts' with the forum so that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Hawkins v. i-TV Digitalis Tavkozlesi zrt.,* 935 F.3d 211, 228 (4th Cir. 2019) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Minimum contacts require some act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). However, if a defendant's contacts with the forum would not have given fair warning that the defendant could be haled into court there, those contacts need not be considered. *See Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC,* 139 F. App'x 140, 143 (11th Cir. 2005).

A. <u>Long Arm Statute</u>

"North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment

on the state's application of its long-arm statute." *True Homes LLC v. Clayton Homes, Inc.*, No. 3:18-CV-000345-KDB-DCK, 2020 WL 6528861, at *11 (W.D.N.C. Nov. 5, 2020). "Courts have long held . . . that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause." *Id.* (citing *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990)).

"In federal question actions based on a statute that does not provide for nationwide jurisdiction, a federal court exercises personal jurisdiction in the manner consistent with state law." *Moseley v. Fillmore Co., Ltd.*, 725 F.Supp.2d 549, 559 (W.D.N.C. 2010) (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997; Fed. R. Civ. P. 4(k)(1)(A)). If jurisdiction is not authorized under the North Carolina Long Arm Statute, additional analysis under the Due Process Clause of the fourteenth amendment is not necessary. *Id.*

Plaintiff fails to identify in its allegations which provision of the North Carolina Long Arm Statute allegedly applies. *See, e.g.,* Doc No. 1 at ¶6; No. 7 at ¶7. Instead, Plaintiff makes bare-bones, conclusory allegations that alleged "acts of copyright infringement… caused harm to Plaintiff in this District, including through the unauthorized exploitation of Plaintiff's copyrighted worked via Defendants' internet-accessible, commercial platforms, resulting in injury to Plaintiff in North Carolina." Doc No. 1 at ¶6; No. 7 at ¶7. Plaintiff also alleges that "Defendants transact business in this District through interactive commercial websites and caused injury to Plaintiff in this District . . . ." Doc No. 1 at ¶7; No. 7 at ¶8. Plaintiff makes no

allegation concerning where either Defendants' alleged infringing acts occurred and thereby does not allege that they occurred in North Carolina.

Though not cited by Plaintiff, the most relevant provision of the North Carolina Long Arm Statute appears to be Section 1–75.4(4). It provides: "in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the Defendant" when at the time of the injury either: (a) solicitation or services were carried on within North Carolina by or on behalf of the Defendants, (b) products, materials, or things processed, serviced or manufactured by the defendant were used within North Carolina within the ordinary course of trade, or (c) unsolicited bulk commercial email was sent into North Carolina by the defendant. N.C.G.S. 1–75.4(4).

The latter two subsections are plainly inapplicable. Plaintiff does not allege that Navarr processes, services, or manufactures any products within North Carolina. Likewise, there are no allegations that Navarr sent bulk, unsolicited emails within North Carolina. The inquiry then hinges on whether solicitation or services were carried on within North Carolina by or on behalf of Navarr. Here, all the conduct in question took place over the internet, as Plaintiff found Navarr over the internet, entered into a contract governed by Florida and US law, and then any alleged acts with Stability concerning the use of musical works for AI training did not occur in North Carolina. Zumpano Decl. ¶¶5, 6. The North Carolina Court of Appeals has held that the test for personal jurisdiction regarding internet communications is whether a defendant, through its internet postings, manifested an intent to target and focus

on individuals in North Carolina. *Dailey v. Pompa*, 191 N.C. App. 64, 72, 662 S.E. 2d 12, 18 (2008). The result here is the same as in *Dailey*: Plaintiff has presented no evidence to show that Navarr manifested an intent to target North Carolina customers and, thus, the record contains no evidence to support the exercise of personal jurisdiction over Navarr.

B. General Personal Jurisdiction

Plaintiff does not allege that Navarr is subject to "general" personal jurisdiction. To the contrary, Plaintiff alleges that Navarr has its principal place of business in Florida. Doc. No. 1 at ¶3; Doc. No. 7 at ¶3. As Ms. Zumpano's Declaration indicates, Navarr is a Florida corporation with its headquarters and sole place of business in Florida. Zumpano Decl. ¶2. Navarr does not have and has never maintained any physical office, address, bank account, property, registration, or license in North Carolina. *Id.* ¶3. It does not employ any employees in North Carolina. *Id.*

Further, Plaintiff does not allege that Navarr sells products or services in North Carolina, nor a sufficient amount to establish general jurisdiction, nor any relevant to allegedly infringing activity. Indeed, since 2023, Navarr has received less than $275 in revenues from North Carolina, which is less than 0.01% of Navarr's total revenues over that time. *Id.* ¶4. These funds represent general licensing revenue; none of it includes the AI licensing activity that Plaintiff challenges in his lawsuit. *Id.* Put another way, Navarr has received no payments from North Carolina for the

AI licensing activity that Plaintiff challenges in his lawsuit. *Id.* Clearly general personal jurisdiction has not been established for Navarr.

C. <u>Specific Personal Jurisdiction</u>

A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal quotations and citations omitted); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (noting that as compared to general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."); *Int'l Shoe Co.*, 326 U.S. at 319. The Fourth Circuit evaluates the following factors to determine whether the exercise of specific jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claim[] arise[s] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc.*, 963 F.3d at 351-52 (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 278); *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *ALS Scan, Inc.*, 293 F.3d at 712); *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 133 (4th Cir. 2023).

As to this first prong, purposeful availment, courts require that the defendant create a "substantial connection" with the forum by "deliberately" engaging in activities with the forum state or by creating "continuing obligations" with the forum

state's residents. *Burger King Corp.*, 471 U.S. at 475-76. This requirement ensures that a defendant will not be subject to jurisdiction based on "random," "fortuitous," or "attenuated" contacts with the forum or the "unilateral activity of another party or a third person." Id. at 475.

Here, Plaintiff has not alleged that Navarr has property in or conducts activities in North Carolina. Indeed, Navarr has no employees, property, locations, bank accounts or other contacts with North Carolina. Zumpano Decl. ¶3. Further, the 2015 Agreement was from over 10 years ago and was the product of Plaintiff's locating Navarr, rather than Navarr's reach into North Carolina. *Id.* ¶5. In addition, the 2015 Agreement specifically says that it was "made in Florida" and is governed by US and Florida laws, with "specific jurisdiction assigned to the court at in St. Johns County, Florida." Zumpano Decl. Ex. A at p. 5. Most importantly concerning the 2015 Agreement, it does not form the basis of the alleged infringement, rather it defeats the copyright claim.

Similarly, the fact that Navarr had a somewhat interactive website[4] through which Plaintiff contracted with Navarr does not lend substantial support to finding jurisdiction because the alleged infringing activity was not the selling or purchasing

---

[4] Federal courts have found that "[t]he interactivity of a website is also a poor proxy for adequate in-state contacts," as "if having an interactive website were enough in situations like this one, there is no limiting principle—a plaintiff could sue everywhere . . . Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014).

of goods through Navarr's website.[5]  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142 (4th Cir. 2020) ("The general availability of the website to [forum state residents] thus does not create the substantial connection . . . necessary to support the exercise of jurisdiction. *See Walden*, 571 U.S. at 284, 134 S.Ct. 1115 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection* with the forum State.") (emphasis added)"). Rather, the alleged infringing activity allegedly was the license of the songs for AI training, which did not happen as a sale or purchase transaction through Navarr's website.

With respect to the second prong, Plaintiff makes no allegation that the allegedly infringing acts occurred in North Carolina. That is, Plaintiff does not allege that the use of his music for AI training, or allowing Stability to do, occurred in North Carolina. Instead, Plaintiff alleges that Navarr has a principal place of business in Florida and Stability has a principal place of business in California. Doc. No. 1 at ¶¶ 2,3; Doc. No. 7 at ¶¶ 2,3. Thus in the absence of a contrary allegation, the natural inference is that the allegedly infringing actions (if any) would have taken place (if at all) in locations that are not in North Carolina. *See also* Zumpano Decl. ¶6.

---

[5] Plaintiff has not asserted a breach of contract claim; furthermore, any harm flowing from an alleged breach would constitute "a contract damage, not a harm tied to the underlying 'tort' of copyright infringement." *Pan-American Products & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.Supp.2d 664, 685 (M.D.N.C. 2011).

14

Plaintiff alleges that he has been harmed in North Carolina, but even an "effects" analysis does not establish jurisdiction under the claim asserted. "[M]ere injury to a forum resident is not a sufficient connection to the forum. . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). For the copyright claim asserted, it has been held by courts in the Fourth Circuit that the harm occurs at the location of the infringement, not necessarily the Plaintiff's location. *See Pan-American Products & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.Supp.2d 664, 684 (M.D.N.C. 2011) ("copyright infringement usually occurs where the tortfeasor sells the infringing content").

Additionally, as harm is not an element of a copyright claim, *see. e.g., Universal Furn. Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (not listing harm in the elements of copyright infringement), no part of the alleged copyright claim could be said to arise out of activities directed at North Carolina. Accordingly the second prong favors dismissal.

In considering the third prong of specific personal jurisdiction, constitutional reasonableness, Plaintiff makes no allegations supporting why this forum would be the most appropriate forum.

Accordingly, Navarr should be dismissed from this lawsuit due to lack of personal jurisdiction.

## III. Improper Venue

Plaintiff alleges that venue is proper under 28 U.S.C. § 1391(b) and (c). Not so.

Section 1391(b)(1) provides for venue in a judicial district in which any defendant resides if all defendants are residents of the State. That does not apply here because Plaintiff instead alleges that Navarr has a Florida principal place of business and that Stability's place is California. Further, as the statute is construed to refer to being subject to personal jurisdiction, the statute still does not afford proper venue because, as described above, Navarr is not subject to personal jurisdiction.

Section 1391(b)(2) provides for venue where a "substantial part of the events or omissions giving rise to the claim occurred … ." Plaintiff has not alleged where the allegedly infringing activity occurred, but the natural inference is that it was in Florida and/or California, not North Carolina.

Section 1391(b)(3) is clearly not applicable as it addresses the situation when there is no district for the action (*e.g.*, possibly a foreign defendant). As Navarr is a Florida corporation with a principal place of business in Florida, subsection (b)(3) does not apply.

Section 1391(c) also does not provide proper venue. The most relevant of its subsections is subsection (c)(2), which concerns a district in which the defendant is subject to personal jurisdiction. Upon finding a lack of personal jurisdiction over Navarr, however, this section too fails. Accordingly, due to improper venue dismissal is proper.

16

## IV. Failure to State a Claim.

The Rule 12(b)(6) portion of Navarr's motion is reviewed per the familiar standard:

> In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible on its face, a plaintiff must demonstrate more than a sheer possibility that a defendant has acted unlawfully. In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of bare legal conclusions. The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6).

*Synovus Bank v. Coleman*, 887 F.Supp.2d 659, 664 (W.D.N.C. 2012) (internal quotations and citations omitted).

Plaintiff predicates his claim of infringement on his assertion that "Plaintiff's 2015 agreement did not grant Defendants authorization to copy, reproduce, or use the Copyrighted Works for artificial intelligence training." Doc. No. 1 at ¶17; Doc. No. 7 at ¶18. However, the 2015 Agreement plainly states otherwise. *See Schweitzer v. Seaman*, 383 So. 2d 1175, 1178 (Fla. 4th DCA 1980) ("The words found in a contract are to be given meaning and are the best possible evidence of the intent of the contracting parties.")

The relevant portion of the 2015 Agreement, which is governed by Florida and United States law, provides:

> **Grant of Rights -** Licensor grants to AudioSparx a perpetual, irrevocable, non-exclusive, and assignable right to represent, market, sub-license, and distribute to clients on a worldwide basis the Works for all types of commercial and consumer uses, for the financial benefit of Licensor, including but not limited to … and to grant to clients various

rights as necessary including, but not limited to, master use rights, synchronization right . . .

Zumpano Decl. Ex. A at p. 1.

This provision granted Navarr d/b/a AudioSparx an irrevocable right to distribute and sub-license the Works for "all types of commercial uses." "All types" clearly includes AI licensing for AI training. Accordingly, Plaintiff's claim fails as a matter of law.

Plaintiff appears to take issue with the fact that "[w]hen Plaintiff entered into [the Agreement] in 2015, AudioSparx did not market or describe AI licensing or AI training as part of its business." Doc. No. 1 at ¶18; Doc. No. 7 at ¶19. This distinction is immaterial—Plaintiff agreed to a broad and unrestricted license agreement with Navarr that explicitly allows Navarr to sub-license the Works. Zumpano Decl. Ex. A at p. 1. The plain language of the Agreement and its uses of "all" and "including, but not limited to" makes clear that the permitted uses are not limited to those that are explicitly stated or that Navarr might have contemplated at the time. *See AXA Equitable Life Ins. Co. v. Gelpi*, 12 So. 3d 783, 785 (Fla. Dist. Ct. App. 2009) (holding that language in a release stating "'including but not limited to,' does not limit the General Release to those causes of action specifically listed."); *see also Cohen v. Cohen*, 299 So. 3d 486, 488 (Fla. Dist. Ct. App. 2020) (holding that settlement agreement "could have limited, but did not limit" language in contract and declining "to read such a limitation into the clear and unambiguous settlement agreement.").

As such, the asserted copyright claim is meritless. Plaintiff alleges that Navarr copied his copyrighted works without authorization, citing a contract that gives that

very authorization. Plaintiff's lawsuit is an attempt to retroactively change or ignore the agreement. If Plaintiff did not wish to authorize such broad uses of his audio recordings, he was under no obligation to agree to the terms of the Agreement. Any other conclusion would undermine and render useless the plain language of the Agreement and cut against basic principles of contract law.

As such, the Complaint should be dismissed for failure to state a claim.

## V.     Conclusion

For the foregoing independent reasons, the claims against Navarr should be dismissed.

This the 17th day of February, 2026.

<div align="right">

s/ *David W. Sar*
David W. Sar
N.C. State Bar No. 23533
dsar@brookspierce.com
**BROOKS, PIERCE, MCLENDON,**
 **HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:   (336) 271-3175
Facsimile:   (336) 232-9075

*Attorney(s) for Defendant Navarr Enterprises, Inc.*

</div>

## <u>CERTIFICATE CONCERNING ARTIFICIAL INTELLIGENCE</u>

The undersigned hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of the foregoing document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this 17th day of February, 2026.

<div style="margin-left:50%">

s/ *David W. Sar*
David W. Sar
N.C. State Bar No. 23533
dsar@brookspierce.com
**BROOKS, PIERCE, MCLENDON,**
 **HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:  (336) 271-3175
Facsimile:  (336) 232-9075

*Attorney(s) for Defendant Navarr Enterprises, Inc.*

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date indicated below the foregoing document (with its exhibits, if any) was served on counsel of record by the CM/ECF System for the Western District of North Carolina, which will generate and send an e-mail notification of said filing to all counsel of record. I hereby also certify that on the date indicated below the foregoing document (with its exhibits, if any) was served on the following unrepresented party by depositing a copy in the mail with the United States Postal Service, postage prepaid and addressed to:

> Jerry Anders
> 132 Stoneridge Ln.
> Pisgah Forest, NC 28768

with a courtesy copy for the same unrepresented party sent by email to magickentertain@gmail.com.

Respectfully submitted this 17th day of February, 2026.

> s/ *David W. Sar*
> David W. Sar
> N.C. State Bar No. 23533
> dsar@brookspierce.com
> **BROOKS, PIERCE, MCLENDON,**
> **HUMPHREY & LEONARD, L.L.P.**
> Post Office Box 26000
> Greensboro, NC 27420-6000
> Telephone: (336) 271-3175
> Facsimile: (336) 232-9075
>
> *Attorney(s) for Defendant Navarr Enterprises, Inc.*