| | |
|---|---|
| JERRY ANDERS D/B/A ANDERS MANGA, <br>       Plaintiff, <br>   v. <br><br> STABILITY AI US SERVICES CORPORATION; and NAVARR ENTERPRISES, INC. D/B/A AUDIOSPARX, <br>       Defendants. | **DEFENDANT NAVARR ENTERPRISES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

The Opposition (Doc. 20) filed by Plaintiff Jerry Anders ("Plaintiff") underscores the reasons identified in Navarr's Motion filings (Docs. 13-15) why the claim against Navarr should be dismissed. Service was insufficient, personal jurisdiction (and venue) is absent, and the 2015 Agreement defeats the claim.

## ARGUMENT

### I.     Insufficient Service of Process

Plaintiff's Opposition does not dispute that the Summons and Complaint were *never actually delivered* by the process server (or the Pack 'n Post employee) to an officer, managing or general agent, or other agent authorized by appointment or law to receive service of process for Navarr. The Opposition also does not dispute that Florida public records showed an address for Navarr's registered agent that was in

1

addition to the private mailbox address at the Pack 'n Post; indeed, the Opposition confirms awareness of the other address. S*ee* Doc. 20 at 4; Doc. 20-2 at 34.

The Florida service statute is clear that delivery to a private mailbox address is not sufficient if there is another address discoverable through public records. A Florida case is instructive. The court in *TID Servs., Inc. v. Dass* examined a set of facts in which a non-private mailbox address was more difficult to discover than that in the present case—yet attempted service was still found to be ineffective. 65 So. 3d 1 (Fla. 2d DCA 2010). In *TID*, the annual reports for the two years preceding attempted service contained only one address: that of a private mailbox. *Id*. at 2. The court noted that there were two other public records, a billing record from the tax collector's office and a 2008 record maintained by the property appraiser's office for a parcel of real estate what defendant owned jointly with another entity, that contained a non-private mailbox address for defendant. *Id*. at 7. In light of these records, the court found that service on the private mailbox was not appropriate substitute service. *Id*. at 8.

Here, Plaintiff concedes that (i) public records showed an address for Ms. Zumpano in addition to the private mailbox (both before and after Navarr updated its address with the Florida Secretary of State in January 2026 to remove the private mailbox address), and (ii) Plaintiff's process server knew of such address. Accordingly, Plaintiff's service attempt was insufficient. *See Baker v.*

*Warner/Chappell Music, Inc.*, No. 14-CV-22403, 2014 WL 4426169, at *3 (S.D. Fla. Sept. 9, 2014) ("[I]n light of Plaintiffs' own admission that there *are* other addresses for [defendant's registered agent] discoverable through public records, it is equally clear that Plaintiffs failed to properly effect service"). As previously set forth, it is Plaintiff's burden to show that he effectuated service properly – nonetheless, he elected to deliver the Summons and Complaint solely and improperly on a private mailbox. Service on a private mailbox is not an acceptable substitute for Plaintiff's inability to locate Navarr's registered agent.

Further, Plaintiff's reliance on Fla. Stat. § 48.091(4)(b) is misplaced. This statute allows service on "any employee of such [registered agent who is a] natural person who is present at the designated registered office at the time of service." Ms. Kelly, of Pack 'n Post, is not an employee of Ms. Zumpano (or Navarr) and does not fall under the purview of this provision. *See* Doc. 15 (Zumpano Decl.) at ¶ 9.

Accordingly, the claims against Navarr should be dismissed for insufficient service of process.

## II.     Lack of Personal Jurisdiction and Venue

Plaintiff's personal jurisdiction arguments rely upon claimed facts separate from the claim of copyright infringement due to distribution of songs to the co-defendant for AI training purposes. Accordingly, Plaintiff's argument is not that specific personal jurisdiction is present, but instead that Navarr is subject to general

jurisdiction in this Court. The facts, however, show that general jurisdiction is lacking.

> General personal jurisdiction, on the one hand, requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair to defend itself in that state.

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292, n.15 (4th Cir. 2009) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)) (internal quotation marks and citations omitted).

Plaintiff does not argue – and thus concedes – that Navarr has not registered to do business in North Carolina. *See* Doc. 15 (Zumpano Decl.) at ¶ 3 ("Navarr does not have … any … registration, or license in North Carolina.). Plaintiff also does not contest that Navarr is a Florida company with its place of business and headquarters in Florida, and has no offices, addresses, bank accounts, property or employees in North Carolina. *Compare* Doc. 20 (Plaintiff's Opposition) & Doc. 15 (Zumpano Decl.) at ¶ 3. Plaintiff also does not contest, and fails to provide any contrary facts, that he initiated contact with Navarr and then agreed to the 2015 Agreement which provides that it was "made in Florida" and "governed by" the laws of the United States and Florida – not North Carolina.

4

Plaintiff's other contentions do not provide support for jurisdiction. Plaintiff claims that, pursuant to the 2015 Agreement (made in Florida), Navarr sent him three emails in 2015 concerning the contractual relationship (Doc. 20-2 at Exs. 31, 37, 39) and paid him royalties under that contract (allegedly less than $150 over ~10 years) (Doc. 20-2 at Exs. 17, 21, 33, 34). Plaintiff also claims that Navarr allegedly has some comparable contractual relationships with 39 other North Carolina artists (Doc. 20-2 at Ex. 38), but Plaintiff neither shows any action by Navarr to solicit such artists in North Carolina nor challenges Navarr's declaration about the very small amount of revenue it has received from North Carolina.

As Plaintiff concedes that present case is a "copyright lawsuit, not a contract dispute," Doc. 20, p. 3, the question is whether such things are sufficient to establish general jurisdiction. Based upon Fourth Circuit precedent, the answer is no. The Fourth Circuit has written: "[s]urely evidence of a single, short-term contractual relationship does not rise to the level of 'continuous and systematic' contact." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993), as holding "single contract insufficient to generate general jurisdiction, *even in combination with a series of other contacts*" (emphasis added)). As in *Saudi*, Navarr's communications after the 2015 Agreement show only a negligible connection with North Carolina. Here, the

interactions with Plaintiff (and presumably other artists[1]) were in conjunction with one or more Florida-made contracts. They do not show Navarr making itself at home in North Carolina or purposefully availing itself of North Carolina's laws generally.

Plaintiff also claims that Navarr had accessible webpages, including an FAQ page, and issued at least one general press release. Doc. 20-2 at Exs. 5, 16, 20. For the reasons previously set forth, having a generally accessible website and a mass-sent (or generally available) press release does not qualify for general jurisdiction.

Plaintiff identifies his communications with Navarr in which he was given an opportunity to opt out of having his music be used for AI training, he did not take such opportunity, and he instead sought to revoke the 2015 Agreement that was irrevocable according to its terms. Plaintiff concedes that when he sought revocation, he reached out to Navarr (in Florida) – rather than the reverse. Plaintiff further does not base his claim for infringement upon the alleged acts of allowing an opt out or insisting upon adherence to the written contract. Accordingly, these communications do not give rise to jurisdiction. Plaintiff also points to a webpage of Stability AI. Doc. 20-2 at Ex. 9. It is not a basis for jurisdiction over Navarr.

With respect to the specific jurisdiction inquiry, Plaintiff does not assert that the alleged infringement – the distribution of music to Stability for AI training

---

[1] Plaintiff's allegations regarding other artists presumptively refer to those under substantially similar contracts governed by Florida law. *See* Doc. 20 at 7 (referring to North Carolina artists "also under mandatory perpetual contracts").

purposes – occurred in North Carolina. He does not contest that such actions occurred outside of North Carolina. He also does not contest the case law previously cited about the site of alleged copyright infringement. Accordingly, specific jurisdiction is lacking.

As personal jurisdiction is absent, venue is also improper.

### III.    Failure to State a Claim

In the Opposition, Plaintiff concedes – again – that he entered into the 2015 Agreement. Plaintiff does not challenge its validity.

The Fourth Circuit is clear that courts must be cognizant of a plaintiff's pro se status but that the liberal construction that a pro se party's complaints are entitled to is not carte blanche to overlook clear defects. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). See *Dimarzo v. CMS (Centers for Medicare)*:

> While pro se complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them. . . . Only those questions which are squarely presented to a court may be properly addressed.

No. 5:20-CV-00100-M, 2020 WL 4043974, at *3 (E.D.N.C. July 17, 2020) (quoting *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). Here, Plaintiff has filed both a Complaint and a First Amended Complaint, and he has not sought to amend further. Accordingly, for purposes of the Rule 12(b)(6) motion, the new factual allegations and exhibits in the Opposition in should not be considered in

7

relation to the Rule 12(b)(6) portion of the Motion. Courts in the Western District of North Carolina have held that "[a]dditional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)," notwithstanding a plaintiff's pro se status. *Mixon v. Charlotte-Mecklenburg Sch.*, No. 3:11-CV-228-MOC-DSC, 2011 WL 5075808, at *4 (W.D.N.C. Aug. 5, 2011) (citing *Beck v. City of Durham*, 129 F. Supp. 2d 844, 855 (M.D.N.C. 2000)); *see also Hardin v. McLaurin*, No. 3:25-CV-00040-KDB-SCR, 2025 WL 2692694, at *6 (W.D.N.C. Sept. 4, 2025) (acknowledging that pro se plaintiff "attempts to interject new factual allegations that are not properly before this Court because they are not included in an Amended Complaint.").

If only considering the facts and materials sufficiently referenced by the Complaint and First Amended Complaint, Plaintiff's argument against Navarr's 12(b)(6) motion is that "[t]he 2015 Agreement contains no grant of rights for AI training." Doc. 20, p. 16. Plaintiff posits that the language "all types of commercial and consumer uses" is not unlimited. Not so. As noted in Defendant's previous brief, this language is almost immediately followed by the phrase "included, but not limited to . . .". *See* Doc. 14, p. 2. The language is plain.

Plaintiff argues that "the contracts catch-all must be read in light of the enumerated human-listening uses . . . not copying for training data where the music is not heard by humans." Doc. 20, p. 1. This argument improperly inserts language

(human-listening) into the 2015 Agreement that is not there and ignores the language (all types … included but not limited to) that is present. Furthermore, the rule of construction of *ejusdem generis* is applicable "only where this is some inconsistency or ambiguity in the contract and the meaning of [a] general provision is doubtful and requires clarification." *Pottsburg Utilities, Inc. v. Daugharty*, 309 So. 2d 199, 201 (Fla. Dist. Ct. App. 1975) (citing 17A C.J.S. Contracts § 313). This is not the case here. The 2015 Agreement explicitly grants a broad, irrevocable license to the Works for "all types of commercial and consumer uses." Navarr's sub-license to Stability is one such commercial use, defeating the copyright claim.

Even if the Court were to consider Plaintiff's new allegations, the same outcome results – a failure to state a claim. Plaintiff argues that "AudioSparx's own pricing FAQ shows what 'commercial use' meant in practice." Doc. 20, p. 18. This is immaterial. Florida law is firmly established: "[i]f a contract provision is clear and unambiguous, a court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract." *SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200 (Fla. Dist. Ct. App. 2012). Such is the case here. The language of the 2015 Agreement is not open to multiple interpretations – the language of the contact is unambiguous in the broad rights it grants to Navarr. It also states: "[t]his agreement represents the full and complete understanding between the parties." Doc. 15-1, p. 5.

Plaintiff argues that "Defendant's later conduct further undermines their [sic] claim that AI training was plainly covered by the 2015 Agreement." Doc. 20, p. 20. But the 'conduct' he references was press release made *by Stability*, and it has no bearing on the 2015 Agreement between Plaintiff and Navarr, *see* Doc. 20-2, pp. 15–16. Plaintiff points to no evidence of agreement or consideration between Navarr and Plaintiff to amend the agreement. *See St. Joe Corp. v. McIver*, 875 So.2d 375, 382 (Fla. 2004). Last, the fact that there was an opt-out process further confirms the understanding that AI training was within the license grant, as one could only opt out of something if the activity was already in the grant.

Plaintiff's exhibits and commentary about his agreement with a third-party and "Vampire Diaries," a pricing FAQ, various other webpages, and an emailed press release, do not address the issue of whether the plain contract language defeats the copyright claim. *See* Doc. 20-2, pp. 17–19, 22, 25. Further, Plaintiff does not attempt to assert a claim based upon his contentions about the opt-out process, rather his filing confirms that his claim is for alleged copyright infringement due to the distribution of songs to Stability for AI training. His claim is squarely defeated by the contract's plain language.

## **CONCLUSION**

For the foregoing reasons, the claims against Navarr should be dismissed.

This the 2nd day of March, 2026.

s/ *David W. Sar*
David W. Sar
N.C. State Bar No. 23533
dsar@brookspierce.com
**BROOKS, PIERCE, MCLENDON,**
 **HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:  (336) 271-3175
Facsimile:   (336) 232-9075

*Attorney(s)    for    Defendant    Navarr Enterprises, Inc.*

## CERTIFICATE CONCERNING ARTIFICIAL INTELLIGENCE

The undersigned hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of the foregoing document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this 2nd day of March, 2026.

s/ *David W. Sar*
David W. Sar
N.C. State Bar No. 23533
dsar@brookspierce.com
**BROOKS, PIERCE, MCLENDON,**
 **HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:  (336) 271-3175
Facsimile:   (336) 232-9075

*Attorney(s) for Defendant Navarr Enterprises, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below the foregoing document (with its exhibits, if any) was served on counsel of record by the CM/ECF System for the Western District of North Carolina, which will generate and send an e-mail notification of said filing to all parties/counsel of record. I hereby also certify that on the date indicated below the foregoing document (with its exhibits, if any) was served on the following unrepresented party by depositing a copy in the mail with the United States Postal Service, postage prepaid and addressed to:

>Jerry Anders
>132 Stoneridge Ln.
>Pisgah Forest, NC 28768

with a courtesy copy for the same unrepresented party sent by email to magickentertain@gmail.com.

Respectfully submitted this the 2nd day of March, 2026.

>s/ *David W. Sar*
>David W. Sar
>N.C. State Bar No. 23533
>dsar@brookspierce.com
>**BROOKS, PIERCE, MCLENDON,**
>**HUMPHREY & LEONARD, L.L.P.**
>Post Office Box 26000
>Greensboro, NC 27420-6000
>Telephone: (336) 271-3175
>Facsimile: (336) 232-9075
>
>*Attorney(s) for Defendant Navarr Enterprises, Inc.*

13