# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL ACTION NO. 1:25-cv-00451-MR

| | |
|---|---|
| JERRY ANDERS, d/b/a ANDERS MANGA,<br><br>    Plaintiff,<br><br>v.<br><br>STABILITY AI US SERVICES CORPORATION; and NAVARR ENTERPRISES, INC., d/b/a AUDIOSPARX,<br><br>    Defendants. | **DEFENDANT STABILITY AI US SERVICES CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

## INTRODUCTION

Plaintiff Jerry Anders ("Anders") opposes Stability AI US Services Corporation's ("Stability AI") motion to dismiss by arguing that Stability AI has consented to general jurisdiction in North Carolina and has sufficient contacts to warrant the exercise of specific personal jurisdiction in the state. As discussed below and in Stability AI's opening brief, neither argument has merit, and the Court should grant Stability AI's motion to dismiss.

## STABILITY AI DID NOT CONSENT TO GENERAL JURISDICTION

Anders argues that Stability AI consented to general jurisdiction in North Carolina by complying with the state's foreign business registration statute. In

1

support, Anders cites just one case: a December 2025 decision by the North Carolina Court of Appeals, *PDII, LLC v. Sky Aircraft Maintenance, LLC*, 925 S.E.2d 28 (N.C. Ct. App. 2025), which has been temporarily stayed by the North Carolina Supreme Court. In *PDII*, the North Carolina Court of Appeals held in a matter of "first impression" that N.C. Gen. Stat. §§ 55-15-01, 55-15-02, 55-15-05, and 55-15-07 (collectively, the "NC Statutes") implicitly require foreign businesses to consent to general jurisdiction in North Carolina as a condition of receiving a certificate of authority from the Secretary of State. *See id.* However, that decision is not a final one. The North Carolina Supreme Court has already granted a temporary stay of the *PDII* mandate, has permitted *amicus* briefs from Chamber of Commerce of the United States and North Carolina Chamber Legal Institute, and has a petition for discretionary review under consideration. *See* Exs. A, B and C.

Where, as here, the North Carolina Supreme Court "has not spoken to" the interpretation of a North Carolina statute, federal courts may look to "the state's intermediate appellate court decisions" as the "next best indicia" of how the highest court would rule. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). Importantly, however, "such decisions 'may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (citation omitted). The Fourth Circuit has not hesitated to disregard intermediate appellate decisions that appear contrary to the "plain

language" at issue or that violate a state supreme court's "canons of construction." *See id.* at 1157 ("While there are appellate court decisions in New Jersey that support such a view, . . . we are firmly persuaded that the highest court of New Jersey would not concur with these opinions.").

Courts in this District have already found, on at least three occasions, that consent to jurisdiction is not established by merely registering to do business in the state. *See AGCS Marine Ins. Co. v. Crane & Equip. Fin. Co., LLC*, 2024 WL 3838380, at *2 (W.D.N.C. Aug. 14, 2024) ("The statute governing the authority to transact business in North Carolina requires foreign corporations to obtain a certification from the North Carolina Secretary of State, but does not explicitly require them to consent to general personal jurisdiction."); *Zhang v. United Health Grp., Inc.*, 2024 WL 3576456, at *5 (W.D.N.C. June 28, 2024) ("North Carolina has no such statute compelling consent from corporations"), *report and recommendation adopted*, 2024 WL 3571740 (W.D.N.C. July 29, 2024); *Sebastian v. Davol, Inc.*, 2017 WL 3325744, at *11 (W.D.N.C. Aug. 3, 2017) ("Without an indication that North Carolina statutorily requires a corporation to consent to general jurisdiction in order for that corporation to actually conduct business in North Carolina, this Court cannot find that Defendants consented to general jurisdiction in North Carolina.")

Consistent with this District's precedent, this Court should conclude that compliance with the NC Statutes does not require consent to general jurisdiction. Further, for at least the following **five** reasons, *PDII* should not be followed.

*First*, the *PDII* court premised its interpretation of North Carolina law on two recent cases, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 134 (2023) and *Espin v. Citibank, N.A.*, 2023 WL 6447231 (E.D.N.C. Sep. 29, 2023), but neither lends support for the *PDII* decision. Beginning with *Mallory*, that decision is inapposite because it addressed whether it is *constitutional* under the Due Process Clause for Pennsylvania to compel consent to general jurisdiction as a prerequisite to registering to do business in the state. In other words, the Supreme Court did not analyze *whether* Pennsylvania law compels consent to general jurisdiction; it analyzed whether Pennsylvania *can* do so without offending the Due Process Clause. Unlike the NC Statutes, Pennsylvania law "is *explicit* that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation . . . ." *Mallory*, 600 U.S. at 134 (emphasis added).

Courts in this District have twice considered the NC Statutes in light of *Mallory*, and in each case concluded that *Mallory* is inapposite. In *AGCS Marine Insurance Company*, the court found that "*Mallory* does not apply to these circumstances" and agreed with Chief Judge Myers of the Eastern District that "*Mallory* is inapposite because North Carolina law, unlike that of Pennsylvania, does

4

not require foreign corporations that register to do business in North Carolina to also consent to suit in the state." *ACGS Marine Ins. Co.*, 2024 WL 3838380, at \*2-3 (quoting *Bancredito Holding Corp. v. Driven Admin. Servs. LLC*, 2024 WL 731956, at \*3 (E.D.N.C. Jan. 8, 2024)). And in *Zhang*, the court held: "The decision in *Mallory* did not shift the Supreme Court's personal jurisdiction jurisprudence, but rather affirmed that states could compel out-of-state corporations to consent to personal jurisdiction as a condition to registering for business within the state. However, this is distinguishable from the present case, as North Carolina has no such statute compelling consent from corporations . . . ." 2024 WL 3576456, at \*5.

The highest courts in other states have likewise held that *Mallory* is not relevant to *whether* a state's law requires consent as a condition of registering to do business in the state. For example, the Iowa Supreme Court considered its own state's statutes (nearly identical to the NC Statutes) in light of *Mallory* and observed: "In *Mallory*, the fight wasn't really about state law. Indeed, it seemed pretty well agreed that Pennsylvania's statute did require foreign corporations to consent to personal jurisdiction in Pennsylvania. Rather, the fight in *Mallory* was about whether it was constitutional for Pennsylvania to impose that requirement." *Kelchner v. CRST Expedited Inc.*, 29 N.W.3d 315, 323–24 (Iowa 2025) (citation omitted).

Turning to *Espin*, that decision invoked *Mallory*, as well as three North Carolina Supreme Court cases, to hold that the NC Statutes are consent-to-general-

5

jurisdiction statutes. 2023 WL 6447231, at *3–4. Each of the cited North Carolina Supreme Court decisions, however, concerned *service of process*, not personal jurisdiction. *See id.* (quoting language that "such a service [of process] will be held to confer jurisdiction" from *Oliver v. U.S. Fid. & Guar. Co.*, 174 N.C. 417 (1917); that "such corporation is amenable to service of process" from *Steele v. W. Union Tel. Co.*, 206 N.C. 220 (1934); and "to bring the foreign corporation into court the service of process must be made upon an officer or agent" from *Babb v. Cordell Indus., Inc.*, 242 N.C. 286, 288 (1955)).

The Fourth Circuit analyzed this issue in *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020), where "official commentary" to a similar South Carolina statute provided that a foreign corporation that registers to do business "thereby agrees that it is amenable to suit in the state." *Id.* at 138 n.3. The Fourth Circuit held that the phrase "amenable to suit," given the statutory context, refers to "service of process," and "conflation of 'amenable to suit' to 'general jurisdiction' is clearly incorrect." *Id.* The *Espin* court improperly conflated consent-to-*service* jurisprudence with consent-to-*jurisdiction* jurisprudence—an error repeated by the *PDII* court.[1] The North Carolina Supreme Court is unlikely to do the same.

---

[1] Chief Judge Myers distinguished the *Espin* decision in *Bancredito Holding Corp. v. Driven Admin. Servs. LLC*, 2024 WL 731956, at *3 (E.D.N.C. Jan. 8, 2024).

Thus, *Mallory* and *Espin* do not, as the *PDII* court claims, "support th[e] notion" that the NC Statutes are consent-to-general-jurisdiction statutes. *See PDII*, 925 S.E.2d at 34.

**Second**, the *PDII* court's reliance on jurisprudence from Georgia is misplaced. In 1992, the Georgia Supreme Court read into Georgia's business registration statute a requirement of consent to general jurisdiction primarily because otherwise, under the language of Georgia's oddly-worded long-arm statute, a foreign corporation registered in Georgia could *never* be subject to jurisdiction in the state. *See Allstate Ins. Co. v. Klein*, 422 S.E.2d 863 (Ga. 1992). The Georgia Supreme Court returned to *Klein* in 2021 to determine whether it was wrongly decided. See *Cooper Tire & Rubber Co. v. McCall.*, 863 S.E.2d 81 (2021). In *Cooper Tire*, the Georgia Supreme Court timidly defended *Klein* as "not clearly wrong under the governing case law at the time" but declined to overturn it primarily because (1) otherwise, "registered corporations [w]ould not be subject to the jurisdiction of Georgia's courts *at all*" and (2) *Klein* <u>itself</u> "does notify out-of-state corporations that their corporate registration will be treated as consent to general personal jurisdiction in Georgia." *Id.* at 434-35 (emphasis added).

The key problem the Georgia Supreme Court faced in *Klein* and *Cooper Tire*—that the state's long-arm statute, by its terms, applies exclusively to "nonresidents"—does not exist in North Carolina. North Carolina's long-arm statute

7

applies to any "person" or "party." N.C. Gen. Stat. § 1-75.4. And, in North Carolina, there is no *Klein* decision "notifying foreign corporations" for over 30 years "that their corporate registration will be treated as consent to general personal jurisdiction in [North Carolina]." *See Cooper Tire*, 863 S.E.2d at 434. Given the stark differences between the development of Georgia law and the Court of Appeals' sudden adoption of a new rule in the *PDII* case, the North Carolina Supreme Court is unlikely to follow the same course. *See K&C Logistics, LLC v. Old Dominion Freight Line, Inc.*, 374 So. 3d 515, 527 (Miss. 2023) ("Whereas the court in *Cooper Tire* relied on its prior ruling in *Klein* to support its holding, this Court does not have prior case law adopting consent by registration to provide a basis for such a holding. . . .This Court finds that there is no state law that provides that Old Dominion either expressly or impliedly consented to general jurisdiction when it registered to do business.").

*Third*, the North Carolina Supreme Court is unlikely to create law by *reading into* the NC Statutes a requirement that is not there. The NC Statutes do not refer to "consent" or to "jurisdiction" at all. The North Carolina Supreme Court will "give effect to the words actually used in a statute" and "neither 'delete words used' nor 'insert words not used' in the relevant statutory language during the statutory construction process." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 551, 809 S.E.2d 853, 861 (2018) (citations omitted). Put another way, the *PDII* decision offends one of the North Carolina Supreme Court's core canons of statutory

construction: i.e., that it is the purview of the General Assembly to impose statutory requirements, and those requirements must be ascertained from the plain language of the statute. *See id.*

Two North Carolina Supreme Court cases analyzing other statutes are instructive. In *Wing v. Goldman Sachs Trust Company, N.A.*, the court addressed whether a statutory pleading requirement also implicitly served as a jurisdictional prerequisite. 876 S.E.2d 390, 399 (N.C. 2022). The Court held that it did not:

> Given our adherence to the plain language of a statute, generally, the legislature has not shown an intent for a statutory requirement to function as prerequisites for . . . jurisdiction when the legislature neither mentions jurisdiction in the statute nor references it in the statute entitled 'jurisdiction.' . . . On its face, N.C.G.S. § 36C-2-205(a) does not mention jurisdiction, and N.C.G.S. § 36C-2-205(a) is not mentioned in the statute dedicated to subject matter jurisdiction, N.C.G.S. § 36C-2-203.

*Id.* In another case involving jurisdictional statutory interpretation, the North Carolina Supreme Court explained that it "is not at liberty to treat the verification requirement as jurisdictional in one context and procedural in another. Doing so would require us to read into a statute language that simply is not there. . . . The General Assembly knows how to attach distinct legal consequences to different acts or omissions described in a single statute." *Matter of O.E.M.*, 864 S.E.2d 257, 261 (N.C. 2021) (citations omitted); *see also In re D.S.*, 694 S.E.2d 758, 764 (N.C. 2010) ("On its face section 7B–1703 does not mention jurisdiction . . . . We believe that

9

had the legislature intended section 7B–1703 to implicate subject matter jurisdiction, the legislature would have . . . expressly stated so in section 7B–1703 itself.”).

These and other cases suggest that the North Carolina Supreme Court is likely to hold that if the General Assembly wanted to require foreign businesses to consent to general jurisdiction as a condition to conducting business in the state, it would have done so, and in a way that would provide those businesses with notice of the requirement. *See Ridge Cmty. Invs., Inc. v. Berry*, 239 S.E.2d 566, 570 (N.C. 1977) (“In interpreting statutes, the primary duty of this Court is to ascertain and effectuate the intent of the Legislature. . . . Had the Legislature intended to create a jurisdictional requirement as to the enforcement of liens, it could easily have done so by the use of explicit language.”).

***Fourth***, numerous states have enacted statutes similar to the NC Statutes at issue here, and the vast majority of courts interpreting them have held that, by their plain language, the statutes do <u>not</u> require consent to general jurisdiction. *See, e.g.*, *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1321 (11th Cir. 2018) (“In the Waites’ view, by imposing ‘the same duties, restrictions, penalties, and liabilities’ on registered foreign corporations, Florida law indicates that a foreign corporation consents to general jurisdiction in Florida when it registers to do business there. But the text of § 607.1505(2) simply does not say that . . . .”); *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., L.L.C.*, 717 F. App’x 394, 397–98 (5th Cir. 2017)

("None of the forms that DCS filled out as part of its registration with the Secretary of State indicate that by registering DCS consented to suit. None of the statutes covering registration informs a company that by registering it consents to suit."); *Kelchner*, 29 N.W.3d at 325 ("The relevant portions of chapter 490 include no mention of 'consent' or 'jurisdiction,' much less 'personal jurisdiction,' nor any synonyms. Yet these terms, all of which carry familiar legal meanings, are well known to our legislature."); *Chavez v. Bridgestone Americas Tire Operations, LLC*, 503 P.3d 332, 345–46 (N.M. 2021) ("At no point does the BCA state that a foreign corporation consents to general personal jurisdiction by registering and appointing a registered agent under the Act. We will not graft a requirement of this consent onto the language of the statute, as we conclude that the Legislature has not clearly expressed an intent to require foreign corporations to so consent."); *Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 898 N.W.2d 70, 79–80 (Wis. 2017) (statute "mentions neither consent nor jurisdiction; thus, its plain language undermines Ambac's argument. It is too great a leap to characterize consent to general jurisdiction as a 'duty' imposed on every foreign corporation that registers to do business in Wisconsin, particularly where the actual statutory language offers no warning that exposure to suits in Wisconsin for claims arising elsewhere is a consequence of registration."); *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 447 (Ill. 2017) ("Thus, the fact that a foreign

11

corporation registered to do business in Illinois is subject to the same duties as a domestic one in no way suggests that the foreign corporation has consented to general jurisdiction.").

*Fifth*, *PDII* interpreted the NC Statutes in a way that should not be applied retroactively to companies like Stability AI that complied with the statutes prior to the *PDII* decision. Under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), whether a court's interpretation of a statute should be applied retroactively is determined according to three factors: (1) whether the ruling "decid[es] an issue of first impression whose resolution was not clearly foreshadowed"; (2) whether applying the ruling retroactively would further or frustrate the purpose of the statute being interpreted; and (3) whether applying the ruling retroactively would "produce substantial inequitable results." *Id.* at 106-07. "[T]he final determination involves pulling together the three factors for a careful balancing." *Cash v. Califano*, 621 F.2d 626, 629 (4th Cir. 1980).

The North Carolina Supreme Court has also cautioned against applying statutory interpretation retroactively: "The United States Supreme Court has recognized [in *Chevron Oil*] that in some cases it would be inequitable to apply newly announced rules retroactively if prior to the enunciation of the rules parties had reasonably relied on certain principles in ordering their affairs. In such a case the rule is not applied retroactively." *Swanson v. State of North Carolina*, 329 N.C.

576, 581 (N.C. 1991). Here, all three factors weigh against retroactivity. First, the *PDII* decision itself states that "North Carolina has never held that a certificate of authority—alone—subjects a company to jurisdiction to North Carolina." 925 S.E.2d at 34. The ruling was not "clearly foreshadowed," as it was premised solely upon the *Mallory* and *Espin* decisions (both 2023 decisions) discussed above. Second, declining to apply *PDII* retroactively would not harm the purpose of the NC Statutes, given that the alleged "consent" requirement read into those statutes by *PDII* is merely implied, not express. And third, applying *PDII* retroactively to Stability AI would be inequitable because the company had no warning whatsoever that compliance with the NC Statutes would later be deemed consent to general jurisdiction in North Carolina.

For these reasons, this Court should rule in accordance with the prior decisions in this District, and with the great weight of authority from other courts that have considered this issue, and find that compliance with the NC Statutes does not equate to consent to general jurisdiction in North Carolina. Alternatively, the Court should find that the new *PDII* rule should not be applied retroactively to Stability AI, which registered to do business in North Carolina in 2023, two years before that ruling.

<u>**PLAINTIFF FAILS TO ESTABLISH SPECIFIC PERSONAL JURISDICTION**</u>

**A. Plaintiff's Claims Do Not Arise Out of Any North Carolina-Related Activity by Stability AI.**

13

Anders argues that Stability AI is subject to specific jurisdiction because he purchased a Stable Audio subscription in North Carolina and was charged North Carolina sales tax. (Doc. 19 at 6-7.) However, the FAC makes clear that Anders's <u>copyright</u> infringement claim does not arise from that transaction. Instead, Anders's claim in this lawsuit arises solely from the training of Stable Audio, where the alleged <u>copying</u> happened—not from the use, sale, or output of the ultimate Stable Audio program. (Doc. 7 at ¶ 17.) In other words, Anders does not allege that Stability AI is offering or selling an infringing product in North Carolina; rather, he alleges that the copyright infringement—i.e., the copying of his works—occurred while Stability AI was training the Stable Audio program. *See* Doc. 17 at 6–7.

Under binding Fourth Circuit precedent, a court can "exercise judicial power over a person outside of the State when that person (1) <u>directs electronic activity into the State</u>, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) <u>that activity creates</u>, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (emphasis added). Here, the only "electronic activity" Stability AI allegedly "direct[ed] . . . into the State" is the offering of Stable Audio to consumers. *See id.* But it was not "*that* activity" that "create[d]" Anders's "potential cause of action"—it was the *training process* for Stable Audio that created the potential cause of action. *See id.* (emphasis added).

Thus, under *ALS Scan, Inc.*, Stability AI's provision of Stable Audio to consumers in North Carolina is not relevant to the specific jurisdiction analysis, and Anders's argument fails. *See id.*; *see also Firebirds Int'l, LLC v. Firebird Rest. Grp.*, LLC, 2017 WL 4366750, at *4 (W.D.N.C. Oct. 2, 2017) (online sales irrelevant where the alleged infringement was not related to those sales).

**B. A Single Subscription Sale to Plaintiff Is Insufficient to Establish Specific Jurisdiction.**

Even if the single Stable Audio subscription sale to Anders were relevant to the specific jurisdiction analysis, it would be insufficient as a matter of law to create personal jurisdiction. A single sale—especially one initiated by the plaintiff or occurring after the alleged wrongdoing—is not a sufficient contact under the Due Process Clause. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003) ("[T]he only concrete evidence of online exchanges between CPC and Maryland residents was the single donation initiated by Carefirst's counsel (and ostensibly made to bolster the position of her client in this litigation)"); *Simpson Performance Prods., Inc. v. Wagoner*, 2015 WL 13619480, at *2 (W.D.N.C. May 8, 2015) ("[T]he Court does not consider the purchases initiated by Plaintiffs to determine whether personal jurisdiction exists for Defendants."); *United Plastics Corp. v. Terra Techs., Inc.*, 2007 WL 433389, at *4 (M.D.N.C. Feb. 6, 2007) (single sale plus website was insufficient for jurisdiction); *see also Fidrych*, 952 F.3d at 141 ("[T]he mere fact that the website is accessible in

15

a given state does not mean that [defendant] is targeting its activities at that state . . . .").

Accordingly, even if Anders's purchase of a subscription to Stable Audio were relevant, it does not establish personal jurisdiction over Stability AI.

## **JURISDICTIONAL DISCOVERY IS UNWARRANTED**

The Court should deny Anders's alternative request for jurisdictional discovery because it would be futile. As previously discussed, the only contacts between Stability AI and North Carolina that could potentially be relevant to the specific jurisdiction analysis would be those related to the training process for Stable Audio. But Anders has not even alleged that the training process occurred in North Carolina. *See Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016) ("A party is not entitled to discovery that would be futile or otherwise inadequate to establish a sufficient basis for jurisdiction."); *Legacy Data Access, LLC v. MediQuant, Inc.*, 2016 WL 633415, at *2 (W.D.N.C. Feb. 17, 2016) (denying request for jurisdictional discovery because "all Defendant's conduct to which Plaintiff points in support of its allegations appears to have occurred" outside the state, rendering potential discovery a "fishing expedition"). The Court should therefore deny Anders's request.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Stability AI's opening memorandum, Plaintiff has failed to establish that this Court has personal jurisdiction over Stability AI under a consent, general, or specific jurisdiction theory. The motion to dismiss should be granted in its entirety.

This the 9th day of March, 2026.

/s/ *Susan H. Boyles*
SUSAN H. BOYLES
NC Bar No. 20877
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
sboyles@ktslaw.com

*Attorney for Defendant Stability AI US Services Corp.*

17

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT

The undersigned attorney hereby certifies that DEFENDANT STABILITY AI US SERVICES CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION complies with Local Rule 7.1(c)(d). This Brief was created using Microsoft Word, and it contains fewer than 25 pages exclusive of the caption, signature block, Certificate of Service, Certification Regarding Artificial Intelligence and this Certificate of Compliance with Page Limit.

This the 9th day of March, 2026.

/s/ *Susan H. Boyles*
SUSAN H. BOYLES
NC Bar No. 20877
KILPATRICK TOWNSEND
  & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
sboyles@ktslaw.com

*Attorney for Defendant*
*Stability AI US Services Corporation*

18

## <u>CERTIFICATE CONCERNING ARTIFICIAL INTELLIGENCE</u>

The undersigned hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of the foregoing document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this 9th day of March, 2026.

/s/ *Susan H. Boyles*
SUSAN H. BOYLES
NC Bar No. 20877
KILPATRICK TOWNSEND
  & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
sboyles@ktslaw.com

*Attorney for Defendant Stability AI US Services Corp.*

19

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing DEFENDANT STABILITY AI US SERVICES CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION has been served on opposing counsel via the Court CM/ECF filing system as follows:

> David W. Sar
> dsar@brookspierce.com
> **BROOKS, PIERCE, MCLENDON,**
> **HUMPHREY & LEONARD, L.L.P.**
> Post Office Box 26000
> Greensboro, NC 27420-6000
>
> *Attorney(s) for Defendant*
> *Navarr Enterprises, Inc.*

I further certify that on March 9, 2026, I served the foregoing document on *pro se* party Jerry Anders d/b/a Anders Manga by email at magickentertain@gmail.com in accordance with the Pro Se Request Regarding Electronic Notice, filed on December 29, 2025.

This the 9th day of March, 2026.

> /s/ *Susan H. Boyles*
> Susan H. Boyles
>
> *Attorney for Defendant*
> *Stability AI US Services Corporation*